# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **GLEN E. SHREWSBURY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 1:08-00840** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 8 and 10.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 2 and 3.)

The Plaintiff, Glen E. Shrewsbury (hereinafter referred to as "Claimant"), filed an application for DIB on February 7, 2003, alleging disability as of April 5, 2001, due to diabetes, neuropathy, PTSD, coronary artery disease, depression, and anxiety. (Tr. at 54, 61, 92-94, 159.) The claim was denied initially and on reconsideration. (Tr. at 54-56, 61-62.) On September 3, 2003, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 63.) The hearing was held on November 6, 2003, before the Honorable R. Neely Owen. (Tr. at 437-87.) By decision dated March 12, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 26-29.) The ALJ's decision became the final decision of the Commissioner on September 10, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 9-12.) On November 2, 2004, the Appeals

Council subsequently allowed Claimant to submit additional evidence, and on May 3, 2007, the Appeals Council remanded the case to ALJ Geraldine H. Page for further development and consideration. (Tr. at 5-6, 639-42.) A remanded hearing was held on August 17, 2007. (Tr. at 741-62.) By decision dated September 11, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 651-65.) The ALJ's decision became the final decision of the Commissioner on April 29, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 632-34.) On June 16, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e),

416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic

> limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity during the relevant period of time from April 5, 2001, through September 30, 2001. (Tr. at 663, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from severe physical impairments, including neuropathy, diabetes mellitus, obesity, hypothyroidism, coronary artery disease, osteoarthritis of the left knee and bilateral hands, and chronic obstructive pulmonary disease, but that he did not suffer from severe mental impairments. (Tr. at 655; 663, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 664, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity for light exertional work as follows:

5

> [T]he claimant retained the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk six hours in an eight hour workday, and sit for six hours. He could occasionally climb ramps and stairs, balance, kneel, crouch, crawl, and stoop, and occasionally perform handling. He was precluded from concentrated exposure to extremes of cold and hot temperatures, excess humidity, pollutants, and irritants, and also from working around hazardous machinery, unprotected heights, and vibrating surfaces. He had no further physical limitations within these restrictions. His mental impairments were not severe prior to his date last insured.

(Tr. at 664, Finding No. 6.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 664, Finding No. 7.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a parking lot attendant, recreation center attendant, and transportation attendant, at the light level of exertion. (Tr. at 663, 664, Finding No. 9.) On this basis, benefits were denied. (Tr. at 664, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch,

495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 19, 1950, and was 57 years old at the time of the administrative hearing, August 17, 2007. (Tr. at 92, 653.) Claimant had a high school education and received vocational training as a certified welder. (Tr. at 165, 653; 664, Finding No. 8.) In the past, he worked as a self-employed owner/operator of an excavation company. (Tr. at 160, 168-74, 653.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in (1) failing to recognize Claimant's mental impairment as severe, (2) failing to consider that the VA disability rating necessarily equaled the Commissioner's Listings, and (3) finding an ability to work. (Document No. 9 at 4-8.) The Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 10 at 6-14.)

Analysis.

1. Severe Impairment and VA Disability Rating.

Claimant first alleges that the ALJ erred in failing to find that his post traumatic stress disorder ("PTSD") was a severe impairment. (Document No. 9 at 4-6.) He asserts that because he was awarded a fifty percent disability rating for PTSD effective August 27, 2001, one month prior to his

date last insured, the ALJ clearly erred in not finding the condition as a severe impairment. (Id. at 5.) He notes that the ALJ determined that the VA records failed to demonstrate any significant functional limitations from the PTSD and depression until after his date last insured, that the GAF assessments in May and September, 2001, contradicted a severe impairment, and that none of his mental health records prior to the date last insured reflected a provider opinion that he was totally and permanently disabled and unable to work. (Id.) Claimant asserts that the ALJ's reasoning is inaccurate. (Id.)

Claimant notes that the basis of the VA award included the treatment notes of his treating psychiatrist, Dr. Dar. (Id.) The ALJ however, failed to acknowledge Dr. Dar in her decision. (Id.) Rather, Claimant contends that the ALJ "seized on two GAF's, took administrative notice of the GAF scale and then, on her own, determined that [Claimant's] impairment was not severe." (Id. at 5-6.) Thus, Claimant asserts that the ALJ erred in not finding his PTSD as a severe impairment. (Id. at 6.)

Claimant also argues that the ALJ erred in failing to consider that the VA disability rating regarding Claimant's PTSD necessarily equaled the Commissioner's Listings. (Document No. 9 at 4, 6-8.) He asserts that the "ALJ's cavalier disregard of [Claimant's] VA disability rating was unconscionable." (Id. at 7.) He further asserts that the determination is evidence that is entitled to a certain amount of weight and must be considered by the ALJ. (Id. at 7-8.)

The Commissioner asserts that the ALJ correctly determined that the evidence of record did not establish that Claimant had significant difficulty with his mental condition until after his date last insured expired. (Document No. 10 at 7.) The Commissioner asserts that the ALJ noted that no provider considered Claimant totally and permanently disabled and unable to work or suggested that Claimant's mental condition significantly impacted his mental ability to work up to his date last insured. (Id. at 8.) In fact, Claimant testified that he stopped working due to problems controlling his hands and feet. (Id.) The Commissioner notes that the opinions of the state agency consultants, Dr.

Binder and Dr. Solomon corroborate the ALJ's finding that Claimant's PTSD and affective disorder were non-severe impairments. (Id.) Regarding Dr. Dar's opinion, the Commissioner asserts that her opinion was rendered two years after the expiration of Claimant's date last insured and that Dr. Dar did not relate her opinion back to the relevant period the ALJ was required to review. (Id. at 8-9.) Regarding the VA ten percent disability rating for Claimant's PTSD, the Commissioner asserts the rating was warranted upon information that showed that Claimant had only mild or transient symptoms that decreased work efficiency and ability to perform occupational tasks only during periods of significant stress or that his symptoms were controlled by continuous medication. (Id. at 9.) The Commissioner notes that the ability to work during periods of significant stress is not defined as basic work activity, "and if [Claimant's] symptoms were 'controlled' through treatment, then there was no cogent reason why they would significantly impact his ability to perform basic work activities." (Id.) Furthermore, the Commissioner notes that the VA noted seven months after his date last insured that Claimant's GAF remained at 65 due to only mild symptoms. (Id.) Finally, the Commissioner asserts that during the relevant period, Claimant's treating psychiatrist, Dr. Amir questioned whether Claimant had PTSD, following his PTSD evaluation in September, 2001, which was only ten days before his date last insured. (Id. at 10.) Dr. Amir assessed a GAF of 65, which was reflective of only mild limitations. (Id.) Thus, the Commissioner asserts that the evidence established that Claimant's PTSD was not a severe impairment and that substantial evidence supports the ALJ's decision.

Regarding the VA disability rating, the Commissioner asserts that the ALJ correctly noted that the ultimate determination of disability is reserved to the Commissioner, who is not bound by the findings of other agencies with respect to disability. (Document No. 10 at 7.)

To be deemed disabled, a claimant must have an impairment or combination of impairments

9

which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2007). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

With respect to Claimant's mental impairments, the ALJ noted that the evidence first demonstrated complaints of irritability and moodiness in May, 2000. (Tr. at 338, 656.) She noted that Claimant subsequently was diagnosed with PTSD and depression, and was assessed a GAF of 65,[2] by the VA Center. (Tr. at 371, 656.) Claimant's diagnosis later was changed to PTSD. (Tr. at 654, 738.) On February 13, 2002, the Department of Veterans Affairs awarded him a service connected

---

[2]The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 61-70 indicates that the person has some mild symptoms or "some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

disability of ten percent for PTSD, which was effective August 27, 2001. (Tr. at 654, 713.) The decision explained that "[a]n evaluation of 10 percent is granted whenever there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress; or symptoms controlled by continuous medication."[3] (Tr. at 716.) On January 10, 2003, his PTSD related disability rating was increased to 50 percent. (Tr. at 655, 701-06.) The decision explained that an evaluation of 50 percent is warranted as follows:

> An evaluation of 50 percent is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationship.

(Tr. at 704.) The VA examination revealed that Claimant had recurrent panic attacks, bad dreams and nightmares regarding Vietnam, depression, anxiety, difficulty concentrating and remembering, and difficulty sleeping. (Id.)

The ALJ acknowledged Claimant's treatment for PTSD at the VA, but found that the record failed to show any significant difficulty with these problems until after his date last insured, September 30, 2001. (Tr. at 656.) The ALJ specifically noted that in September, 2001, Claimant was

---

[3] The decision further states:

> A higher evaluation of 30 percent is not warranted unless there is occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often) chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

(Tr. at 716.)

assessed with a GAF of 65, which was indicative of only mild symptoms or difficulty in functioning. (Id.) The ALJ further noted that no provider considered Claimant totally and permanently disabled and unable to work up to his date last insured. (Id.) Thus, while Claimant had medically determinable mental impairments, including anxiety/PTSD and depression prior to his date last insured, the ALJ determined that such impairments were not severe. (Tr. at 657-59.) The ALJ further determined that these impairments resulted in mild limitations in activities of daily living, social functioning, concentration, persistence, and pace, and did not result in any repeated episodes of decompensation of extended duration prior to his date last insured. (Tr. at 659.)

The undersigned finds that the ALJ's step two finding regarding Claimant's mental impairments is supported by substantial evidence. Though the evidence demonstrates that Claimant suffered from PTSD and depression, there is no indication that he had significant functional limitations resulting from the impairments prior to his date last insured. Claimant places much emphasis on the September 8, 2003, opinion of Dr. Nasreen R. Dar, M.D., a psychiatrist. Dr. Dar opined that Claimant's PTSD was a severe impairment that interfered with his daily life and interactions with others to the extent that he was unable to tolerate much stress and did not appear to handle any gainful employment. (Tr. at 397.) As the Commissioner points out however, Dr. Dar's opinion was made nearly two years after Claimant's date last insured had expired and Dr. Dar did not relate her opinion back to the relevant period of time considered by the ALJ. Thus, the Court finds that any error the ALJ may have committed in not considering Dr. Dar's opinion specifically in her decision is harmless because it was not relevant to the time period at issue.

Claimant also places much emphasis on the Department of Veterans Affairs' 50 percent disability rating. As the ALJ noted in her decision however, the ultimate determination of disability in the instant matter is an issue reserved to the Commissioner, who is not bound by the findings of

12

other agencies with respect to disability. See 20 C.F.R. §§ 404.1504, 404.1527(e) (2007). Social Security Ruling SSR 06-03 instructs the Commissioner to evaluate such ratings as opinion evidence, which the ALJ in the instant case did. Despite the VA's 50 percent rating, the totality of all the objective evidence of record before the ALJ however, failed to demonstrate any significant functional limitations resulting from Claimant's PTSD prior to his date last insured. The ALJ therefore, properly considered the VA rating but apparently found that it was not entitled to any significant weight in view of the other evidence of record. The undersigned finds that the ALJ's decision regarding the VA rating and her step two decision therefore, is supported by substantial evidence and that Claimant's arguments are without merit.

2. Ability to Work.

Claimant also alleges that the ALJ failed to produce evidence that Claimant could perform work as a parking lot attendant, recreation center attendant, and transportation attendant at the light level of exertion because the ALJ failed to include limitations in his hypothetical questions to the VE that restricted the hypothetical individual to performing simple one or two step tasks and that prohibited close interaction with the general public, as noted in Dr. Dar's September, 2003 treatment notes. (Document No. 9 at 8.) The Commissioner asserts that Claimant made these subjective complaints to Dr. Dar in September, 2003, which was two years after his date last insured expired, and failed to demonstrate that the complaints were of equal severity during the period under review. (Document No. 10 at 14.) Because the limitations were not supported by the objective medical evidence, the Commissioner asserts that the ALJ was not required to include them in a hypothetical question to the VE. (Id. at 13.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all

13

of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities – presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

SSR 00-4p, which became effective December 4, 2000, and was in effect at the time of the administrative hearing in 2007, states that before an ALJ can rely on Vocational Expert testimony, he or she must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational expert and information contained in the DOT and explain in the determination or decision how any conflict that has been identified was resolved. Social Security Ruling 00-4p, 2000 WL 1898704 (December 4, 2000).

Claimant concedes in his brief that the mental limitations to which he refers were contained in the September, 2003, treatment notes of his treating psychiatrist. However, Claimant failed to demonstrate that these limitations existed prior to his date last insured, September 30, 2001, and the undersigned finds no support for them in the medical record. Consequently, the ALJ was not required to present hypothetical questions to the VE that contained the mental limitations as set forth by Claimant. Accordingly, the undersigned finds that in the ALJ's hypothetical questions to the VE, he included all of Claimant's impairments that were supported by the record, and that his decision to rely on the VE's testimony is supported by substantial evidence. Claimant's argument in this regard is without merit.

14

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 8.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 10.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2009.

R. Clarke VanDervort
United States Magistrate Judge